STATE OF CONNECTICUT *v.* LAMONT THERGOOD
(AC 22977)

Schaller, Bishop and Dupont, Js.

Argued October 29, 2002—officially released March 11, 2003

*Richard E. Condon, Jr.,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Gerard P. Eisenman,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Lamont Thergood, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] The defendant's sole claim on appeal is that the use of his signed confession at trial violated his federal constitutional right to due process because the confession was involuntary. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1 a.m. on March 26, 1999,

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

Lamont Baldwin, Ricky Owen and the defendant were riding around Bridgeport in a car driven by Baldwin. As they proceeded along Knowlton Street, the defendant asked Baldwin to stop the car so that the defendant could get out and urinate. While he was outside the vehicle, the defendant encountered the victim, Telerence Carter. The defendant shot Carter four times with a revolver, killing him.

Officer Milton Johnson of the Bridgeport police department was driving on East Washington Avenue near Knowlton Street when he heard gunshots. Johnson made a U-turn and, as he was approaching Knowlton Street, his vehicle was nearly struck by the car in which Baldwin, Owen and the defendant were traveling. Johnson then made another U-turn so that he could pursue the car. As Johnson pursued the defendant and his companions, Owen grabbed the revolver from the defendant and threw it out the window. The pursuit ended when Baldwin turned onto a dead-end street. Johnson ordered Baldwin, Owen and the defendant to stay in the car until additional police arrived. After additional police officers arrived at the scene, the defendant was patted down and placed in the rear of Johnson's squad car for approximately one hour. Johnson subsequently drove the defendant to the police station where, several hours later, the defendant signed a typed confession in which he admitted shooting Carter.

The defendant was charged with murder in violation of § 53a-54a (a). Prior to trial, the defendant filed a motion to suppress several of his statements, including the confession. The court held a hearing on the motion on October 23, 2000, at which Detectives Heitor Teixeira and Erno Nandori of the Bridgeport police department testified.

Teixeira's and Nandori's testimony at the suppression hearing revealed the following additional facts. The

detectives held the defendant in custody and interrogated him before advising him of his *Miranda* rights. See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). When asked how long the prewarning questioning had lasted, Teixeira stated that "it could have taken a couple of hours . . . ." At approximately 6:54 a.m. Teixeira and Nandori reviewed with the defendant the form used by the Bridgeport police for the waiver of *Miranda* rights. The form, which was admitted into evidence at the hearing, bears the handwritten initials "LT" next to each of the five numbered *Miranda* warnings. The defendant's full signature appears directly beneath a statement waiving his *Miranda* rights. After completing the form, the defendant indicated to the detectives that he wanted to make a statement. The detectives asked the defendant questions, and Nandori typed both the questions and the defendant's oral responses on a computer. In the statement, the defendant admitted responsibility for the shooting on Knowlton Street.

The court concluded that the defendant's confession was voluntary under the totality of the circumstances and, accordingly, denied the defendant's motion to suppress. At trial, after Johnson testified about the circumstances surrounding his pursuit of Baldwin, Owen and the defendant, and the subsequent transportation of the defendant to the police station, the defendant orally renewed his motion to suppress the confession on the ground of involuntariness. The court stated that "the time line in and of itself . . . does give one pause," but nevertheless denied the renewed motion, concluding that the confession was voluntary under the totality of the circumstances. The confession was then admitted into evidence. The jury found the defendant guilty of murder, and the court rendered judgment accordingly. This appeal followed.

The defendant claims on appeal that the use of his signed confession at trial violated his constitutional right to due process because the confession was made involuntarily. Specifically, the defendant argues that his confession should have been suppressed as having been made involuntarily because the police subjected him to two hours of continuous custodial interrogation prior to advising him of his *Miranda* rights. According to the defendant, that action by the police, when combined with what he terms his "subnormal mentality" and his unfamiliarity with the judicial system, overbore his capacity to exercise his constitutional rights, thus rendering his subsequent confession as having been made involuntarily. The state contends that the court properly denied the motion to suppress because the evidence demonstrates that the defendant's confession was voluntary under the totality of the circumstances. In the alternative, the state argues that even if the court improperly denied the defendant's motion to suppress the confession, the error was harmless in light of the overwhelming evidence of the defendant's guilt. We agree with the state that any error by the court was harmless.

"The improper admission of a confession is harmless error where it can be said beyond a reasonable doubt that the confession did not contribute to the conviction. . . . [Our Supreme Court] has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 297, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

In addition to the challenged confession, the jury heard the following evidence. Owen testified that after Baldwin stopped the car on Knowlton Street, the defendant exited the car. After some time had passed, Owen

looked and saw the defendant standing directly in front of Carter, whose hands were raised. Owen then saw the defendant shoot Carter. The state also called Baldwin, who testified that after he stopped the car on Knowlton Street, the defendant exited the car. Baldwin further testified that as he was adjusting the car's tape player, he suddenly heard gunshots. He saw the defendant running toward the car with a gun.

After his arrest, the defendant made a telephone call from the squad room of the police station. Detective Edwin Perez overheard part of the defendant's conversation. Perez testified that he heard the defendant say, "Mom," "I did it," "I shot him" and "no reason." Teixeira, who also overheard the conversation, testified that he heard the defendant say that he "shot the dude for no reason."

Later, the defendant was placed in a cell under suicide watch. Terrance Lambert, Keith Grieco and Paul Nikola, who were the police officers assigned to watch the defendant, overheard statements that he made. Lambert testified that he heard the defendant say to Owen, "I did him, but it wasn't me that killed him, it was God that took him." He also heard the defendant tell Owen, "It wasn't the Budweiser that made me do it." Grieco testified that he heard the defendant say, "My black ass is going down. I should have never confessed. I should have never let them search the car. I didn't shoot at that close of a range that blood would get on my shoes. My life is ruined. You guys are just witnesses. We should have gone down the avenue instead of stopping for that." Grieco also testified that the defendant said that he had pulled the trigger. Nikola testified that he heard a conversation between the defendant and his brother, Mark Thergood. According to Nikola, Mark Thergood asked the defendant what he had told the police. The defendant responded, "I told the truth. I confessed to

it." The defendant does not challenge on appeal the admission of any of those additional statements.

We conclude that the evidence of the defendant's guilt was overwhelming. Even if the court had suppressed the defendant's written confession, the jury still would have heard the testimony of two eyewitnesses who positively identified the defendant and five police officers who collectively overheard him make statements at four different times indicating his responsibility for the shooting. In light of all of that highly inculpatory evidence, we conclude that the state has carried its burden of demonstrating beyond a reasonable doubt that the defendant's written confession did not contribute to his conviction. Consequently, any error by the court in denying the defendant's motion to suppress the confession was harmless beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.